IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JERRY EXUM JR., <br><br> Plaintiff, <br><br> v. <br><br> JOHN DOE, <br> C/O MOTELLO, <br> C/O DULANEY, <br> DR. COLE, <br> WEXFORD HEALTH SOURCE, <br> NURSE NEWELL, <br> NURSE KANTY, <br> NURSE BAKER, and <br> NURSE SHERMAN, <br><br> Defendants. | Case No. 25-cv-01340-MAB |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Jerry Exum, an inmate of the Illinois Department of Corrections who is currently incarcerated at Lawrence Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law

---

[1] The Court has jurisdiction to screen the Complaint in light of Plaintiff's consent to the full jurisdiction of a magistrate judge and the Illinois Department of Corrections' and Wexford's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the Illinois Department of Corrections, Wexford, and this Court.

is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

## THE COMPLAINT

Plaintiff alleges the following: On March 20, 2025, Plaintiff was transported from Lawrence Correctional Center (Lawrence) to Freeport, Illinois, for a court appearance. (Doc. 1, p. 7). Prior to his departure, Correctional Officers Motello and Dulaney handcuffed Plaintiff, wrapped a chain around his body and left arm, and secured the handcuffs and chain with a "black box" handcuff cover. (*Id.*). The handcuffs and the chain made it almost impossible to move, and the handcuffs were very tight, causing Plaintiff's hands to become numb. (*Id.*). Dulaney then placed leg shackles on Plaintiff, which were also tight and uncomfortable. (*Id.*). Plaintiff was escorted to the transport van, seated in the back row, and not properly secured. (*Id.*). The drive from Lawrence to the courthouse in Freeport, Illinois, was six hours. (*Id.* at p. 8). During the long ride, Plaintiff's wrists and legs hurt. (*Id.* at p. 10).

Once they arrived in Freeport and were a few blocks from the courthouse, another driver ran a stop sign and drove into the transport van. (Doc. 1, p. 8). Plaintiff was propelled from his seat, he hit the steel and plastic partition that separated him from the correctional officers, and he fell on the floor of the van. (*Id.*). Excruciating pain shot down his neck and into his back. (*Id.*). Plaintiff was dizzy and confused, his head was throbbing, his ears were ringing, and his body was sore. (*Id*). Plaintiff crawled back onto his seat and sat back down. (*Id.*). Dulaney and Motello asked Plaintiff if he was "alright." Plaintiff informed them that he had slammed his head on the partition and now his neck and back "hurt like crazy." (*Id.*).

Dulaney spoke with Motello and called someone at Lawrence for further instructions. (Doc. 1, p. 9). John Doe, the driver of the other vehicle and an employee of animal control in Freeport, approached the van asking if everyone was "alright" and saying, "it was his fault." (*Id.* at p. 8-9). The police arrived, and the accident was documented. (*Id.* at p. 9). Plaintiff asked the correctional officers if they thought he needed to go to the hospital. Motello again called Lawrence. (*Id.*). Plaintiff overheard Motello tell someone at Lawrence that the courthouse was only a few blocks away from their location. Motello asked Plaintiff whether he wanted to go to the courthouse or return to Lawrence. (*Id.*). Even though Plaintiff was in pain, Plaintiff chose to go to the courthouse. (*Id.*). Before Motello hung up the phone call with the individual at Lawrence, Plaintiff heard her say that Plaintiff would need to see a doctor when he returned. (*Id.* at p. 10). Motello again asked Plaintiff if he was "okay," and Plaintiff told her that his body was throbbing and his neck and back were sore, but he was "still alive." (*Id.*). Following the court appearance, they drove back to Lawrence. (*Id.*).

When Plaintiff returned to Lawrence, he was taken to the health care unit. (Doc. 1, p. 10). In the health care unit, Dulaney told Sergeant Riggs that Plaintiff had been in a car accident. (*Id.*). Riggs responded, "Dr. Cole knows and wants to see him." (*Id.*). But Dr. Cole refused to see Plaintiff because she was too busy doing paperwork on new transfers. (*Id.*).

Nurse Newell examined Plaintiff's back and neck. (Doc. 1, p. 10). Newell saw swelling and asked Plaintiff to rate his pain. (*Id.*). Plaintiff rated his pain at an eight but also stated that his head "felt like a 10." (*Id.*). Plaintiff asked if he was going to be taken

to the hospital because Newell was "not qualified as a doctor." (*Id.* at p. 11). Newell responded, "no," and told Plaintiff that the decision to send him to a hospital is up to Dr. Cole. (*Id.*). When it appeared that Plaintiff was going to be sent back to his cell without seeing a doctor, he asked if he could have something for his pain. (*Id.*). Nurse Kanty gave Plaintiff a Toradol injection and administered insulin because Plaintiff is diabetic. (*Id.*). Newell then gave Plaintiff a bag of ice and six Motrin pills. (*Id.*). Plaintiff again asked about his head injury and if Dr. Cole would see him. (*Id.*). Nurse Newell told Plaintiff that Dr. Cole would most likely see him the following day. (*Id.* at p. 12).

That evening, Plaintiff was unable to eat dinner. (Doc. 1, p. 12). He vomited in the night and again at breakfast the following day. (*Id.*). Plaintiff "was in so much pain" that he "just wanted to die." (*Id.*). On March 21, 2025, Plaintiff stopped Nurse Baker and told her about his pain caused by the car crash. (*Id.*). Baker stated that she did not know about the car accident and that if she remembered, she would bring him pain medication. (*Id.*). Baker did not return. (*Id.*). Plaintiff then stopped Nurse Sherman, and Sherman gave Plaintiff the same response – that she did not know about the car accident and that if she remembered she would bring him pain medication. (*Id.* at p. 12-13). Sherman also did not return. (*Id.* at p. 13).

On March 22, 2025, Plaintiff's neck was stiff, and he could not rotate it "too far." (Doc. 1, p. 13). His back was swollen and in pain, and his wrists were sore and spasming. (*Id.*). Plaintiff had vomited again the previous night. (*Id.*). Plaintiff spoke to Nurse Newell and asked about seeing Dr. Cole. (*Id.*). Newell informed Plaintiff that Dr. Cole was still busy doing paperwork for the new transfers. Newell stated she would bring Plaintiff

medication for his pain if she remembered, but she did not return to his cell. (*Id.*).

On March 23, 2025, Plaintiff was given ibuprofen and aspirin by Nurse Eckert, and the pain medicine helped "a lot" for a "short while." (Doc. 1, p.14). Plaintiff did not see Dr. Cole until March 26, 2025. (*Id.*). Dr. Cole examined Plaintiff's neck and back, and she told Plaintiff that he would be sore for a couple of months. (*Id.*). She then asked about Plaintiff's hand injury and whether Plaintiff was vomiting. (*Id.* at p. 14-15). Plaintiff told her that he had thrown up three times after the crash. (*Id.*). Dr. Cole stated that he probably had a concussion and that if after a few days he still was having headaches and dizzy spells then she would send him to the hospital for a scan. (*Id.*).

Days later, Plaintiff was still having major headaches, and his balance was "off at times." (Doc. 1, p. 15). Plaintiff wrote to Dr. Cole seeking medical treatment, but he received no response. (*Id.*). Certain nurses became vindictive towards Plaintiff and would dismiss him when he sought care. (*Id.*).

## PRELIMINARY DISMISSALS

Plaintiff sues the driver of the other vehicle, who worked for animal control in Freeport, Illinois, and is identified as John Doe. (Doc. 1, p. 16). Following the accident, Plaintiff alleges that John Doe stayed at the scene, he inquired into the well-being of Plaintiff, Dulaney, and Motello, and he admitted the accident was "his fault." While these allegations may support a claim of negligence against John Doe, negligence is not enough to bring a claim under Section 1983. Plaintiff must demonstrate something more than negligence, or even gross negligence, to support a Section 1983 claim. *See James v. Hale*, 959 F. 3d 307, 318 (7th Cir. 2020); *Chapman v. Keltner*, 241 F. 3d 842, 845 (7th Cir. 2001).

Accordingly, any constitutional claim intended against John Doe is dismissed.

Plaintiff has also failed to state a claim against Wexford Health Source (Wexford). As a corporation, Wexford can only be liable for a policy or practice that caused the alleged violation of a constitutional right. *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). Plaintiff has made no such claim. In fact, Wexford is not even mentioned in his statement of claim, and merely naming Wexford as a defendant in the case caption is not sufficient to state a claim. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Therefore, Wexford is dismissed as a defendant without prejudice.

## DISCUSSION

Based on Plaintiff's allegations and his articulation of his claims, the Court designates the following counts:

**Count 1:** Eighth Amendment cruel and unusual punishment claim against Motello and Dulaney for failing to properly secure Plaintiff in the transport van on March 20, 2025.

**Count 2:** Eighth Amendment excessive force claim against Motello and Dulaney for securing Plaintiff's handcuffs and leg shackles too tight during the transport to Freeport, Illinois, on March 20, 2025.

**Count 3:** Eighth Amendment deliberate indifference claim against Newell, Kanty, Baker, Sherman, and Dr. Cole for failing to provide adequate medical care for his injuries resulting from the car accident that occurred on March 20, 2025.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered**

**dismissed without prejudice as inadequately pled under the *Twombly*[2] pleading standard.**

### Count 1

Plaintiff claims that Correctional Officers Motello and Dulaney did not properly secure him in the van resulting in him slamming into the dividing partition and causing injury when the car accident occurred on March 20, 2025. (Doc. 1, p. 7-8).

The Court assumes that failing to "properly secure" means that Plaintiff was not provided a seatbelt. Failing to provide a seatbelt, however, standing alone, does not violate the Constitution. Accordingly, Count 1 is dismissed as to Motello and Dulaney. *See Proffitt v. Ridgway*, 279 F.3d 503, 507 (7th Cir. 2002) (concluding that failure to seatbelt an arrestee in the back seat of a squad car, which wrecked causing the arrestee's death, was at most negligence); *Dale v. Agresta*, 771 F. App'x 659, 661 (7th Cir. 2019) (noting that neither the Seventh Circuit or the Supreme Court has ruled that "transporting an inmate without a seatbelt creates an intolerable risk of harm"); *O'Quinn v. Williams*, No. 23 C 50276, 2025 WL 2418410, at *2 (N.D. Ill. Aug. 21, 2025) ("the Constitution does not guarantee seatbelts during transport").

### Count 2

Plaintiff explains that after Motello and Dulaney handcuffed him, he was "stuck in that same position and its very tight it cuts off your blood circulation leaving your hand numb." (Doc. 1, p. 7). He also states that the leg shackles were "very tight and very uncomfortable," causing his legs "to go numb and fall asleep." (*Id.*).

---

[2] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

Even if the handcuffs and leg shackles were applied too tightly, these facts do not rise to the level of an Eighth Amendment claim. "The 'core requirement' of an excessive force claim under the Eighth Amendment is that the defendant 'used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm.'" *Gates v. Doctors,* No. 24-CV-704-JVB-JEM, 2024 WL 5186647, at *1 (N.D. Ind. Dec. 19, 2024) (quoting *Hendrickson v. Cooper,* 589 F.3d 887, 890 (7th Cir. 2009)). Plaintiff does not make any allegation that the officers purposely placed the handcuffs and leg shackles on him to cause him pain or that they ignored his complaints pain. Accordingly, Count 2 is dismissed. *See Tibbs v. City of Chi.,* 469 F. 3d 661, 666 (7th Cir. 2006) (finding no excessive force under the Fourth Amendment reasonableness standard where the plaintiff complained once to an officer, gave no indication of the degree of his pain, and experienced minimal injury).

**Count 3**

To plead an Eighth Amendment deliberate indifference claim, a plaintiff must allege: (1) that he suffered from an objectively serious medical condition (objective standard); and (2) that the individual defendant was deliberately indifferent to that condition (subjective standard). *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *Arnett v. Webster,* 658 F.3d 742, 750 (7th Cir. 2011) (citing *Johnson v. Snyder,* 444 F.3d 579, 584 (7th Cir. 2006)). A medical condition is objectively serious if "'a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson.'" *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019) (quoting *Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014)). To satisfy the subjective component, a prisoner must demonstrate that an

official knew of and disregarded an excessive risk to inmate health. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Neither medical malpractice, nor mere disagreement with a doctor's medical judgment will amount to deliberate indifference. *Id.*

Plaintiff has failed to state a claim against Nurses Kanty, Baker, and Sherman. As to Nurse Kanty, Plaintiff states that she treated him when he arrived at the health care unit following the car accident. Nurse Kanty spoke with Dr. Cole about Plaintiff's current condition and then administered Toradol, gave Plaintiff an ice pack, and 6 Motrin pills. (Doc. 1, p. 11). Plaintiff was then told by another nurse, Nurse Newell, that he most likely would be seen by Dr. Cole the following day. Nurse Kanty's conduct, as described, does not plausibly amount to deliberate indifference. She consulted with the medical doctor and administered medication for Plaintiff's pain. There is no indication that she was aware that Plaintiff continued to feel unwell after March 20, 2025, and that Plaintiff was denied subsequent care. Count 3 is dismissed as to Nurse Kanty.

Count 3 is also dismissed against Nurses Baker and Sherman. According to the Complaint, Plaintiff had a single interaction with each nurse on March 21, 2025. (Doc. 1, p. 12). Plaintiff informed the nurses that he was injured in a car accident and experiencing pain. The nurses said they would bring him pain medication, if they remembered, but neither one did. (*Id.* at p. 12-13). Plaintiff did not have any further interactions with the nurses. As pled, the Court cannot plausibly infer that either Nurse Baker or Nurse Sherman disregarded an excessive risk to his health or safety by failing to return with pain medication one time. At most, these individuals acted with negligence, which is not deliberate indifference. *See Johnson v. Dominguez*, 5 F. 4th 818, 825 (7th Cir. 2021)

("deliberate indifference does not equate to medical malpractice"); *Owens v. Duncan,* 788 F. App'x 371, 374 (7th Cir. 2019) (a single interaction with staff at sick call did not amount to deliberate indifference); *Gutierrez v. Peters,* 111 F.3d 1364, 1374 (7th Cir. 1997) ("isolated instances of neglect…cannot support a finding of deliberate indifference").

Count 3 will proceed against Nurse Newell. Newell examined Plaintiff on March 20, 2025, when he returned to Lawrence after the car accident. (Doc. 1, p. 12). He spoke again with Newell on March 22, 2025, and he told her that he still had not seen Dr. Cole and that he continued to experience pain. (*Id.* at p. 13). Newell did not, however, take any action to ensure that Plaintiff was provided adequate medical care for his injuries, including assisting him in seeing a doctor or providing him pain medicine. The Court will allow Plaintiff to proceed on Count 3 against Nurse Newell.

Count 3 will also proceed against Dr. Cole, Plaintiff's treating physician, who has delayed and/or denied Plaintiff care for his injuries as a result of the car accident on March 20, 2025.

### MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 3), which is **DENIED**.[3] Plaintiff discloses several unsuccessful efforts to contact attorneys via written correspondence and has included the letters from seven law firm declining representation. Accordingly, he appears to have made reasonable efforts to retain counsel on his own. With respect to his ability to pursue this action *pro se*, Plaintiff indicates that

---

[3] In evaluating Plaintiff's Motion for Recruitment of Counsel, the Court applies the factors discussed in *Pruitt v. Mote,* 503 F.3d 647, 654 (7th Cir. 2007) and related authority.

he has no legal knowledge, and his incarceration will make litigating this case difficult. He also states that he has a learning disability and mental health problems. Nonetheless, the Court finds that Plaintiff can proceed *pro se*, at least for now. Plaintiff's pleadings demonstrate an ability to construct coherent sentences and relay information to the Court. Plaintiff has had some high school education, and he appears competent to attempt to litigate this matter without representation at this time. Once discovery on the merits has commenced, if Plaintiff has significant difficulty, he may refile his motion.

## DISPOSITION

For the reasons set forth above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNTS 1** and **2** are **DISMISSED without prejudice**. **COUNT 3** shall proceed against Dr. Cole and Nurse Newell and is **DISMISSED without prejudice** as to Kanty, Baker, and Sherman. Because there are no surviving claims against John Doe, Motello, Dulaney, Wexford Health Source, Kanty, Baker, and Sherman, the Clerk of Court is **DIRECTED** to terminate them as parties on the docket.

The Clerk of Court **SHALL** prepare for Defendants Dr. Cole and Newell the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendants' place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant pay the full costs of formal service, to the

extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants only need to respond to the issues stated in this Merit Review Order.**

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and (if applicable) his or her attorney were deemed to have entered into a stipulation that any unpaid costs taxed against the applicant shall be paid from any recovery secured in this action.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

In light of this Order, the Motion for Status is **DEEMED moot.** (Doc. 9).

**IT IS SO ORDERED.**

**DATED: January 5, 2026**

                                              **/s/ Mark A. Beatty**
                                              **MARK A. BEATTY**
                                              **United States Magistrate Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.